83,087-01

Texas Court of Criminal Appeals                    May 7, 2015
Attn: Mr. Abel Acosta, Court Clerk
P.O. Box 12308, Capitol Station
Austin, Texas 78711


RE: Ex Parte Eliseo Rivera, Jr., Trial Cause No. CR-09E-061A,
    Appellate No. 07-09-00332-CR


Dear Mr. Acosta,

    Enclosed, please find Applicant's Rebuttal to the Trial Court's Findings of Fact, and Conclusions of Law, along with Applicant's Request for An Evidentiary Hearing, and Motion Requesting this Honorable Court to Order the Texas Rangers to Conduct a Criminal Investigation in regards to the prosecution's misconduct.

    Please file Said Documents among the papers in the above styled, and numbered cause. Furthermore, please perform the proper procedures so that, a time, and date may be set for it's hearing.

    In addition, Applicant has enclosed a self-addressed stamped envelope, and two copies of this cover letter so that, if you could please stamp one copy, and return to Applicant to verify your receipt.

    Applicant sincerely appreciates your assistance.


                    Best Regards,

                    Eliseo Rivera, Jr. T.D.C.J. #1617277
                    Dalhart Unit
                    11950 Fm. 998
                    Dalhart, Texas 79022

RECEIVED IN
COURT OF CRIMINAL APPEALS
MAY 12 2015
Abel Acosta, Clerk

| | | |
|---|---|---|
| Ex Parte | § | In the Texas Court of |
| Eliseo Rivera, Jr. | § | Criminal Appeals of |
| | § | Austin, Texas |

Applicant's Rebuttal to the Trial Court's Findings of Fact and
Conclusions of Law And Request for An Evidentiary Hearing

To the Honorable Justice(s) of Said Court:

Comes Now, Eliseo Rivera, Jr. T.D.C.J. #1617277, hereafter
Applicant in the above styled, and numbered cause, and files this
Rebuttal, and Request pursuant to the Texas Code of Criminal Proce-
dure, Article 11.07(3)(d), and the Texas Rules of Appellate Proce-
dure, Rules 10.(1)(2); 33.1, and 44.2.

In support of the foregoing Applicant presents the following
Facts:

I.

Initially, when Applicant submitted his Habeas Corpus Art. 11.07
along with Memorandum of Law (Memo.), the trial court upon it's re-
view concurred with Applicant that, there did exist issues of fact
that needed to be resolved. Thereafter, the trial court issued it's
"Designation of Controverted, Previously Unresolved Facts Material
to the Legality of Applicant's Confinement"

II.

The trial court upon receiving both trial, and appellate counsels'
Affidavits. Adopted both counsels' answers, and ruled that both coun-
sels' evasive, and erroneous answers satisfied the trial court's

1

questions. Thereafter, the trial court filed it's Findings of Fact, and Conclusions of Law, dated March 25,2015.

## III.

Applicant contends that after having extensively reviewed the trial court's Findings of Fact, and Conclusions of Law. It is clear that, trial court's decisions "resulted in decisions that are based on an unreasonable determination of the facts in light of the evidence presented during trial proceedings", and in Applicant's Art. 11.07, Memorandum of Law. In addition, there are substantial factual questions that persist regarding the validity of Applicant's conviction in his Art. 11.07, Memo. which have not been resolved. Therefore, Applicant will address those issues as they appear in Applicant's Memo.

## IV.

In the trial court's Conclusions of Law dated March 25, 2015, #14, It states as Follows; The State did not engage in Prosecutorial Misconduct. Applicant contends that the trial court as arrived to an erroneous conclusion regarding the prosecution's performance during trial. Applicant does not question the integrity of the trial court. But, with all due respect, Applicant questions, how can trial court arrive to the conclusion as it did in #14. If trial court never posed any questions or requested any information from the prosecution in regards to the legality of the anonymous 911 recording, the initial stop of Applicant or Applicant's previous conviction from where trial court could draw it's conclusions. Therefore, for the aforementioned reasons Applicant will now demonstrate by clear, and convincing evidence that Applicant's conviction is invalid due to the prosecution's

2

unconstitutional actions in Ground One, Points of Error One, Two, and Three.

V.

In Applicant's Art. 11.07, Ground One, Applicant alleges Prosecutorial Misconduct, specifically in Point One, Applicant alleges that the prosecution enfringed upon Applicant's Constitutional Amend. Rights when the prosecution failed to show how the anonymous caller's 911 recording to police was admissible to prosecute Applicant with during trial. Clearly, the 911 recording was the centerpiece of the State's evidence against Applicant. With that said the prosecution desperately attempted to proof to the trial court, and the jury how the 911 tape recording was legally admissible with which to prosecute Applicant by citing Castillo v. State, cite unknown, as the authoritative case. But, as this Honorable Court notices the prosecution failed to provide a cite, which denied Applicant of his right to examine Said case, and verify if it did apply to the situation at hand. (See Memo. p. 4-9). Therefore, the State failed to provide evidence of any degree to indicate that the "911 tape recording" was admissible.

VI.

In addition, due to a timely objection by the defense, when the prosecution introduced the inadmissible "911 tape recording", which was promptly overruled by the trial court. And, the fact that the defense filed it's motion for a new trial, which trial court denied by Operation of Law. This clearly entitled Applicant to an Evidentiary Hearing on the foregoing issue. (TRAP, Rules 33.1; 44.2). While on the other hand, Applicant has cited Crawford v. Washington, 124 S.Ct. 1354 (2004); Coy v. Iowa, 108 S.Ct. 2798, 2802 (1988), and Supreme Court case, Melendez-Diaz v. Mass., 129 S.Ct. 2527 (2009).

3

Which clearly states that on June 25, 2009, the U.S. Supreme Court expanded the scope of the defendant's constitutional rights by declaring that a defendant whose conviction is significantly based on an anonymous caller's recording or other such evidence. This places the burden on the prosecution to produce the anonymous 911 caller during trial. So that, Applicant may exercise his Sixth Constitutional Amend. Right to cross-examine the caller to expose any flaws. (See Memo. p. 24-26). Therefore, pursuant to the foregoing the prosecution's failure to produce such critical witness rendered the 911 tape recording as inadmissible, which rendered Applicant's conviction as void. Applicant has clearly demonstrated that critical questions of constitutional magnitude remain unresolved. Which requires that an Evidentiary Hearing be entertained in order to determine the legality of Applicant's confinement. Moff v. State, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004); United States v. Vasquez, 7 F.3d 81, 84 (5th Cir. 1995).

## VII.

In addition, Applicant has clearly demonstrated by the record, and cited statutes, and State, and Federal case law that Officer Jimenez's initial stop of Applicant was illegal. (See Memo. p.5-7). Furthermore, Applicant contends that the prosecution has drastically failed to prove otherwise. It is established that an anonymous tip usually will justify the initiation of a police investigation. Davis v. State, 989 S.W.2d 859, 863 (TexApp.-Austin 1999) citing Clemens v. State, 605 S.W.2d 567, 570 (Tex. Crim. App. 1980). However, an anonymous tip or telephone call alone rarely will establish the requisite level of suspicion necessary to justify an investi-

4

gation detention. Id. 989 S.W.2d at 863; citing Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The present case is like that in McAfee v. State, 204 S.W.3d 868, 869 (Tex.App.-Corpus Christi 2006), the record reveals that the officer conducting the initial stop testified that he observed appellant's vehicle traveling in excess of the posted speed limit. Therefore, he stopped appellant for speeding. Thereafter, he further testified that, prior to the stop he knew appellant was suspected of being involved in an illegal drug transaction just prior to the stop. During the stop, the officer discovered that appellant had no proof of insurance for his vehicle. A pat-down of the other occupant revealed that the passenger was carrying cocaine that was later admitted at appellant's trial. Unlike the present case, where the officer conducting the initial stop of Applicant testified that, when he observed Applicant he knew Applicant was a suspect in a possible kidnapping of a juvenile. (See Memo. p.5). The officer further testified that, the sole reason he stopped Applicant was to "talk to him and check if the allegation was true". (See Memo. p.14) The officer never testified that Applicant violated any traffic laws as in McAfee, to give rise to reasonable suspicion for a stop. (See Memo. p. 13). In fact the officer realized that, the initial allegation of kidnapping of a juvenile was false that, he decided to not even mention it on his "Probable Cause Affidavit", as the reason why police initially stopped Applicant. (See Memo. p.7; also see State's Exhibit No. 3, found in RR,V.4of6,p.71,L.4-6, & L.20-22). Furthermore, in appellate counsel, David Martinez's Affidavit dated February 13, 2015, appellate counsel concurs with Applicant's contention that Applicant was initially stopped by police without a legal reason. This fact

5

is corroborated by appellate counsel, when he declares under penalty of perjury in his Affidavit that, the reason appellate counsel did not question the validity of the initial detention (stop), was because, up to that point no offense had been committed. Therefore, affirming Applicant's contention that, to this point no one has been able to provide a legal reason why Applicant was initially stopped. Therefore, Applicant has clearly demonstrated that critical questions of constitutional magnitude remain unresolved. Which requires that an Evidentiary Hearing be entertained in order to determine the legality of Applicant's confinement. T.R.A.P., Rule 33.1; <u>Moff v. State</u>, Supra; <u>United States v. Vasquez</u>, Supra.

## VIII.

In trial counsel, Chris Hesse's Affidavit which was filed on February 13, 2015, he tries to justify police's initial illegal stop of Applicant by declaring under penalty of perjury that, because the officer testified that, "about one minute passed between him (officer), receiving the dispatch and him (officer), locating the suspect vehicle". (See trial counsel's Affidavit p.3). Applicant contends that trial counsel is mistaken, Applicant has searched and found no State Statute or State or Federal case law that authorizes the legal theory that, once an officer receives a dispatch for an offense. And, if the officer locates the suspect in a short time this gives rise to a reasonable suspicion stop, and erroneously cites <u>Gurrola v. State</u>, 877 S.W.2d 300, 302 (Tex. CRim. App. 1994). Trial counsel's reliance on <u>Gurrola</u>, to legitimatize the officer's illegal stop of Applicant is misplaced. <u>Gurrola</u>, states in part; It is settled law that there must be a "reasonable suspicion", by the detaining officer that some activity out of the ordinary is occurring or had

6

is corroborated by appellate counsel, when he declares under penalty of perjury in his Affidavit that, the reason appellate counsel did not question the validity of the initial detention (stop), was because, up to that point no offense had been committed. Therefore, affirming Applicant's contention that, to this point no one has been able to provide a legal reason why Applicant was initially stopped. Therefore, Applicant has clearly demonstrated that critical questions of constitutional magnitude remain unresolved. Which requires that an Evidentiary Hearing be entertained in order to determine the legality of Applicant's confinement. T.R.A.P., Rule 33.1; Moff v. State, Supra; United States v. Vasquez, Supra.

## VIII.

In trial counsel, Chris Hesse's Affidavit which was filed on February 13,2015, he tries to justify police's initial illegal stop of Applicant by declaring under penalty of perjury that, because the officer testified that, "about one minute passed between him (officer), receiving the dispatch and him (officer), locating the suspect vehicle". (See trial counsel's Affidavit p.3). Applicant contends that trial counsel is mistaken, Applicant has searched and found no State Statute or State or Federal case law that authorizes the legal theory that, once an officer receives a dispatch for an offense. And, if the officer locates the suspect in a short time this gives rise to a reasonable suspicion stop, and erroneously cites Gurrola v. State, 877 S.W.2d 300, 302 (Tex. CRim. App. 1994). Trial counsel's reliance on Gurrola, to legitimatize the officer's illegal stop of Applicant is misplaced. Gurrola, states in part; It is settled law that there must be a "reasonable suspicion", by the detaining officer that some activity out of the ordinary is occurring or had

6

occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to the crime. (See trial counsel's Affidavit p.2). In the present case, the detaining officer testified that when he observed Applicant's vehicle, he followed it, and regardless to the fact that the officer did not testify that Applicant violated any traffic laws, as in McAfee, he still went ahead and made an illegal traffic stop. Pursuant to the nature of the call, he wanted to check if the call was true and correct, and for no other reason. (See Memo. p.14).

Unlike in McAfee, even though the officer testified that he knew that Appellant had just been involved in criminal activity. The officer testified that the sole reason that gave rise to a "reasonable suspicion", stop was the fact that appellant was speeding. Which concurs with the principles set in Gurrola, "an activity out of the ordinary". Clearly, trial counsel failed to justify why the officer conducted a traffic stop if, Applicant did not violate any traffic laws. Therefore, a question of constitutional magnitude remains unresolved which strictly rquires that an Evidentiary Hearing be entertained.

## IX.

While on the other hand, when the trial court ordered appellate counsel, Mr. David Martinez, in its "Designation of Controverted Previously Unresolved Facts Material to the Legality of Applicant's Confinement", to explain why he did not challenge the legality of Applicant's initial stop? Appellate counsel answered; The reason that I did not question the legality of Applicant's initial detention was because at the time that the officer observed the suspected vehicle allegedly involved in the crime. Applicant had committed

7

no offense. (See Appellate counsel's Affidavit p.1). Clearly, appellate counsel's answer concurs with Applicant's contention that the detaining officer, Mr. Jimenez, had no legal reason to initially stop Applicant which rendered Applicant's initial stop as illegal. Clearly, both trial, and appellate counsels along with the prosecutor have failed to provide any answers or any evidence to satisfy the trial court's "Designation of Controverted, Previously Unresolved Facts Material to the Legality of Applicant's Confinement".

But, regardless to the foregoing facts, trial court indicated in it's Conclusions of Law, #2 that, Applicant's initial detention was lawful. Therefore, Applicant has clearly demonstrated that critical questions of constitutional magnitude remain unresolved. Which requires that an Evidentiary Hearing be entertained in order to determine the legality of Applicant's Confinement. T.R.A.P., Rule 33.1; Moff v. State, Supra; United States v. Vasquez, Supra.

X.

Applicant will now thoroughly show this Honorable Court how the prosecution has failed to produce any evidence to contradict Applicant's contention in Applicant's Art. 11.07, Ground One, Prosecutorial Misconduct, Point Two: Applicant contends that, he has demonstrated the six essential elements which comprise P.C. § 38.04 (b)(1) State Jail Felony, Evading Arrest or Detention while using a vehicle. (See Memo. p. 9-16). Applicant further, contends that he has proven by clear, and convincing evidence embeded in the record that the prosecution has drastically failed to prove by any degree essential element (5). Which dictates that, the prosecution must prove beyond a reasonable doubt that, the detaining officer's intention when he initially stopped Applicant was to arrest Applicant.

8

(See Memo. p.9-16); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brook v. State, 323 S.W.2d 893, 894-95 (Tex. Crim. App. 2000); Thacker v. Dretke, 396 F.3d 601, 613 (5th Cir. 2005). Applicant has meticulously reviewed each essential element and has proven how the prosecution's evidence in the record supports all essential elements except for element (5). The detaining officer never testified that he intended to arrest Applicant. Therefore, the prosecution's failure to strictly satisfy essential element (5), lowered the prosecution's burden of proof, which rendered Applicant's conviction as unconstitutional. (See Memo. p.16).

As this Honorable Court notices even though trial court declares in it's Conclusions of Law, #14, that the State did not engage in prosecutorial misconduct. Clearly, by the trial court's Conclusion in #14, indicates that it refuses to acknowledge the prosecution's fundamental error. It is established in T.R.A.P., Rule 44.2, Reversible Error in Criminal Cases that (a) Constitutional Error occurs; If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Clearly, in the present case, the record reveals that, even though the State failed to meet it's burden in element (5), Applicant was still convicted. Which clearly contradicts the Texas and U.S. Constitutions, and the principles set out in In re Winship, and Jackson v. Virginia,. Therefore, Applicant has clearly demonstrated that critical questions of constitutional magnitude remain unresolved.

9

Which requires that an Evidentiary Hearing be entertained in order to determine the legality of Applicant's Confinement. T.R.A.P., Rule 33.1; Moff v. State,; United States v. Vasquez,.

                              XI.

On Applicant's Art. 11.07, Ground One, Prosecutorial Misconduct, Point Three, Applicant contends that, the prosecution has purposely enhanced Applicant's punishment range beyond the statutory legal limit with Applicant's only prior felony conviction which is not on the T.P.C. § 12.35 State Jail Felony Punishment list, which only qualifies certain serious prior felony convictions as legal enhancements. (See Memo. p.17-22). In addition, what the face of Indictment, Cause No. CR-09E-061A, clearly reveals is that Applicant only has one prior felony conviction, T.P.C. § 29.02 Robbery, Indictment, Cause No. CR-83J-125. Furthermore, Applicant will demonstrate how his adjudication process leads us to T.P.C. § 12.35 State Jail Felony Punishment which govern enhancements when a vehicle is alleged to have been used or exhibited as a deadly weapon.

On September 30,2009, Applicant was initially adjudged guilty by a jury for §38.04(b)(1) Evading arrest or detention while using a vehicle, a State Jail Felony. Moreover, since a vehicle was involved during flight, then the prosecution had the option during the guilt/innocence stage to introduce evidence to try and increase Applicant's punishment range up to a 3rd degree felony. Thereafter, the prosecution did take it's opportunity to increase Applicant's punishment by presenting State's Exhibit P.T.-1 (police chase video), and an agrument in support before the jury alleging that Applicant used or exhibit his vehicle as a deadly weapon. Due to the prosecution's assertion above. This clearly directs us to the language

10

within T.P.C. § 12.35(c)(1) which states in part; An individual adjudged guilty of a State Jail Felony shall be punished for a third degree felony if it is shown on the trial of the offense that: (1) a deadly weapon as defined by Section 1.07, was used or exhibited during the commission of the offense, or during immediate flight following the commission of the offense, and that the individual used or exhibited the deadly weapon or was a party or the offense and knew that a deadly weapon would be used or exhibited;...(See Memo. p.18-19). The State presented the deadly weapon (a vehicle), before the jury as the "special issue", and instructed the jury to consider that if, it found during the guilt/innocence stage. That the prosecution proved that Applicant did use or exhibited his vehicle as a deadly weapon. Then, the jury would answer "yes", to the "special issue". Thereafter, the jury did answer "yes", which increased Applicant's punishment range to a 3rd degree felony. Which exposed Applicant to (2) to (10) years in T.D.C.J. Thereafter, the prosecution attempted to further increase Applicant's punishment range from (2) to (10), to (2) to (20) years in T.D.C.J. by presenting Applicant's prior felony conviction, T.P.C. § 29.02 Robbery, as an enhancement during the punishment phase. (See Memo. p.17).

XII.

Applicant contends that, Applicant's only prior felony conviction (§ 29.02 Robbery), is not on the T.P.C. § 12.35(c)(2)(A)(B) list of serious felony offenses, therefore it did not qaulify to enhance Applicant's punishment range to a 2nd degree felony. For this Honorable Court's convenience Applicant will list all the serious offenses that do qualify for enhancements under T.P.C. § 12.35(c)(2) (A)(B).

11

Under § 12.35(c)(2)(A)

> T.P.C. § 21.02 Continuous Sexual Abuse of Young Child or Children or C.C.P., Art. 42.12,3g(a)(1) which are the following;

P.C.§ 19.02 Murder

§ 19.03 Capital Murder

§ 21.11(a)(1) Indecency with a Child

§ 20.04 Aggravated Kidnapping

§ 22.021 Aggravated Sexual Assault

§ 29.03 Aggravated Robbery

Health & Safety Code § 481.140 Use of Child in Commission of Offense

Health & Safety Code § 481.134 Drug-Free Zone (c),(d),(e), or (f).

P.C.§ 22.011 Sexual Assault

§ 22.04(a)(1) Injury to a Child, Elderly Individual, or Disabled Individual

§ 43.25 Sexual Performance by a Child

§ 15.03 Criminal Solicitation

§ 43.05 Compelling Prostitutions

§ 20A.02 Trafficking of Persons;

Under § 12.35(c)(2)(B)

> C.C.P., Art. 42.12 Section 3g(a)(2) it states; to a defendant when it is shown that a deadly weapon as defined in Sec. 1.07 Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court. On an affirmative finding that the deadly weapon was a <u>firearm</u>, the court shall enter that finding in it's judgment.

Applicant has factually shown that his only prior felony conviction T.P.C. § 29.02 Robbery, is definitely not among the serious felony offenses listed above. Clearly, indicating that Applicant's sentence has been illegally enhanced to a 2nd degree felony.

12

In addition, Applicant will also like to clarify that T.P.C. § 12.35(c)(2)(B), which directs us to C.C.P., Art. 42.12 Sec. 3g(a)(2). Also, does not apply to Applicant due to the fact that, the language in 3g(a)(2), dictates that if Applicant did use or exhibit a deadly weapon to wit: a firearm. Then 3g(a)(2) would apply. But, as it stands in the present case, the record clearly reveals in the Judgment of Conviction by Jury Sheet. (See Attachment Exhibit "C"p.1). That, when the trial court entered it's affirmative findings on the deadly weapon issue. The jury and the trial court determined that a deadly weapon was used, to wit a motor vehicle, not a firearm. Therefore, § 12.35(c)(2)(B); Art. 42.12, Sec. 3g(a)(2), clearly does not qualify to enhance Applicant's punishment range. (See Attachments, Exhibits "B" & "C"p.1). Applicant has shown by clear, and convincing evidence embeded in the record, and applicable State Statutes that Applicant's 2nd degree felony conviction is illegal. (See Memo. p.17-22). Which is contrary to the trial court's Conclusions of Law, #14, where it declares that, the State did not engage in Prosecutorial Misconduct. Therefore, a question of constitutional magnitude remains unresolved. Which strictly requires that an Evidentiary Hearing be entertained.

## XIII.

On September 29,2009, Applicant's case was called to a jury trial (See Memo. p.1). On September 30,2009, during the punishment phase, Assist. Dist. Atty., Mr. Chris Strowd (prosecution), presented Applicant's pen packet before the court, and jury containing documents verifying Applicant's prior felony conviction T.P.C. § 29.02 Robbery in an attempt to increase Applicant's maximum punishment range from (10) years to (20) years in T.D.C.J. (See Memo. p.17-22).

13

The following is not to undermine the integrity of the Deaf Smith County District Attorney's Office. But, Applicant being ignorant to the law conducted a diligent search to gain understanding as to how Applicant's prior felony conviction qualified to increase Applicant's maximum punishment range from (10) to (20) years in T.D.C.J. At the conclusion of Applicant's research, Applicant discovered that, Applicant was found guilty of T.P.C. § 38.04(b)(1) State Jail Felony, Evading arrest or detention while using a vehicle. (See Memo. p.9). Furthermore, during the guilt/innocence phase the prosecution introduced evidence to prove that while Applicant was in flight, Applicant did use or exhibit his vehicle as a deadly weapon. The jury found that Applicant did use or exhibit his vehicle as a deadly weapon, which increased Applicant's maximum punishment range to (10) years in T.D.C.J. The way the Texas Legislature inscribed the langauge in § 38.04, and the fact that Applicant only had one prior felony conviction. This only leads us to one possible enhancement Statute, T.P.C. § 12.35 State Jail Felony Punishment with which the prosecution may attempt to increase punishment. (See State v. Brown, No. 06-09-00212-CR (Tex.App.-Texarkana); also Rebuttal to Counsels' Affidavits, p.5). Moreover, pursuant to the aforementioned, Applicant has discovered that, Applicant's prior felony conviction T.P.C. § 29.02 Robbery does not fall within the realm of qualified serious felony offenses as outlined in § 12.35(c)(2)(A)(B). (See Section XII). Therefore, according to the langange in § 12.35 (c)(2)(A)(B), and the additional State Statutes that § 12.35 directs us to go check. It is apparently clear that, the prosecution's effort to increase Applicant's maximum sentencing range from (10) to (20) years in T.D.C.J. was invalid. In support of this fact Appli-

14

cant has carefully laid out the entire list of serious felony offenses that do qualify to enhance Applicant's sentence. (See Memo. p. 17-22, & Section XII.). Applicant has clearly demonstrated by clear and convincing evidence embeded in the record along with applicable State Statutes that, Applicant's prior felony conviction does not qualify to enhance Applicant's maximum sentencing range. It is incomprehensible to try and understand how this miscarriage of justice could have been overlooked.

## XIV.

The present case is like that in Bobo v. State, 843 S.W.2d 572, 575 (Tex. Crim. App. 1992). Appellant complained that the prosecutor purposely used an inadmissible prior felony conviction to illegally increase Applicant's sentencing range, as the prosecutor has also resorted to in the present case. In Bobo, the court of appeals held that the record reflects that Appellant's indictment contained two enhancement paragraphs. The second paragraph alleged that Appellant had previously been convicted of burglary in a California court. The pen packet contained a conviction certification dated February 24, 1989; however, the identifying fingerprints bear a certification date of April 4,1989. Appellant contended that the prosecutor altered the pen packet by adding additional documents that did not coincide with the original documents.

Clearly, the prosecutor tampered with the inadmissible pen packet trying to illegally qualify it as an enhancement. Once Appellant brought this egregious miscarriage of justice before the court of appeals' attention, the court suggested that Appellant should be afforded a new punishment hearing. The court further sustained Appellant's point of error, and remanded Appellant's case back to

15

the trial court for a new hearing on punishment only. Id. Appellant further complained that, he was stripped of his Sixth U.S. Constitutional Amend. Right. to a fair trial due to the prosecutor's misconduct. For several years the U.S. Supreme Court, and the Texas Court of Criminal Appeals have handed down opinions which seriously hamper the effective investigations, prosecutions, and incarcerations of criminal. The trend to protect the rights of the accused has swung so far to the left that we have seemingly forgotten about the Rights of the victims of crimes. However, it has become increasely clear that these stringent guidelines are forced upon us when the State refuses to follow or be bound by the rules. The actions of the prosecutor in this case, Nancy Conlin must be condemned. Upon discovering what she had done, the District Attorney of Harris County notified the court, terminated her employment, and referred the matter to a Harris County grand jury. By her acts Nancy Conlin has set herself above the rules. Id.

## XV.

Clearly, the present case mirrors Bobo, due to the fact that, as in Bobo, Applicant has factually demonstrated in his Memo. pages 17-22, & 29-31. And, in Section XII, along with evidence embeded in the record, and with State Statute, T.P.C. § 12.35(c)(2)(A)(B) State Jail Felony Punishment. That, Applicant's prior felony conviction clearly does not fall within the realm of qualified serious offenses listed in § 12.35(c)(2)(A)(B), to legally enhance a State Jail Felony. But regardless to the fact above, as in Bobo, the prosecutor, Mr. Chris Strowd set himself above the rules, and in the process has perpetrated a fraud upon the court, and the jury. When the prosecutor presented Applicant's inadmissible prior felony conviction

during the punishment phase of Applicant's trial. Therefore, pursuant to the facts above Applicant has proven that, he is entitled to relief requested in his Memo. Ground One. In the alternative, if the prosecutor continues to insist that Applicant's only prior conviction qualifies as a legal enhancement. Then, Applicant humbly requests that this Honorable Court order the prosecution to clearly lay out it's claim as Applicant has done so in Section XII. So that, Applicant may gain an understanding as to how the law applies to Applicant's prior felony conviction. Applicant has clearly shown in the foregoing, and in his Memo. p. 4-23. That, the trial court's factual determinations in it's Conclusions of Law dated March 25, 2015, regarding #14. That, the State did not engage in prosecutorial misconduct is an erroneous assessment of the facts, which is not supported by the record as a whole. Cearly, questions of controverted, previously unresolved facts material to the legality of Applicant's confinement remain unresolved. Therefore, pursuant to the foregoing an Evidentiary Hearing is required pursuant to Habeas Corpus, Art. 11.07(3)(d); <u>Moff v. State</u>, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004); <u>United States v. Vasquez</u>, 7 F.3d 81, 84 (5th Cir. 1995).

XVI.

When the trial court ordered trial counsel to explain why he did not challenge the State's use of Applicant's prior Robbery conviction for enhancement purposes. Trial counsel simply replied in his Affidavit p.4 that, Applicant's prior Robbery conviction was properly proven by the State. The question posed to trial counsel was not whether Applicant's prior conviction was properly proven. But rather if, it legally qualified to enhance Applicant's punishment. Appli-

17

cant has factually shown in Section XII, and in his Memo. p.17-22, that the short answer to that question. Is, "No", it did not legally qualify to enhance Applicant's punishment. Trial counsel realizing that Applicant had sufficiently proven his contention correct in a desperate attempt provided another answer by declaring under penalty of perjury. That, Applicant's prior conviction did qualify under T.P.C. § 12.42(a)(3) Penalties for Repeat and Habitual Offenders. Clearly, trial counsel's answer was intended to mislead the court. Because, Applicant's current charge T.P.C. § 38.04 State Jail Felony Evading arrest with a vehicle, is not a subsequent to Applicant's previous conviction for Robbery. Therefore, Applicant is not a re peat offender. Furthermore, Applicant only has one prior felony conviction (§29.02), therefore, Applicant is not a habitual offender. (See trial counsel's Affidavit p.4), Clearly, trial counsel's an- swers were designed to mislead the trial court. Which, trial counsel has succeeded as evident by the trial court's answer in it's Con- clusions of Law #4.

## XVII.

In addition, when the trial court issued it's "Deignation of Controverted, Previously Unresolved Facts Material to the Legality of Applicant's Confinement". Where within, the trial court ordered Appellate counsel on page 2, to explain why Appellate counsel did not raise the fact of, the prosecution's using of an inadmissible prior conviction to illegally enhance Applicant's sentence. In appellate counsel's affidavit responding to all the designated issues especially to the inadmissible enhancement. Appellate counsel pur- posely refused to acknowledge the trial court's question regarding the prosecution's illegal enhancement of Applicant's sentence. It

18

is clear that, appellate counsel does not even want to touch this issue with a "ten foot pole". Applicant has proven by clear, and convincing evidence embeded in the record that, both trial, and appellate counsels have drastically failed to provide any credible evidence to support their evasive answers regarding the trial court's questions. Clearly, it is apparent that, the only alternative by which to resolve the trial court's controverted unresolved facts that are material to the legality of Applicant's confinement is to remand this case back to the trial court and order trial court to entertain an Evidentiary Hearing with live testimony.

## XVIII.

In Ground Two, Ineffective Assistance of Counsel (I.A.C.), Applicant contends that, had trial counsel conducted even a minimal pretrial investigation. Trial counsel would have discovered that, the identity of the anonymous 911 caller was unknown which rendered the 911 recording as inadmissible. (See Memo. p.4-9, & p.23-26). Furthermore, trial counsel would have discovered that, the enhancement paragraph in regards to Applicant's only prior felony conviction on the face of Applicant's indictment did not qualify as a specific type of serious offense that could legally enhance punishment on a State Jail Felony conviction under T.P.C. § 12.35(c)(2)(A)(B). (See Memo. p.17-23, & p.28-32; also see Section XII). In addition, in support of Applicant's contention that, trial counsel was not prepared for trial. Applicant will show by clear, and convincing evidence enbeded in the record how trial counsel was not familiar with the enhancement structure for State Jail Felony Punishments under T.P.C. § 23.35(a)(1)(c)(2)(A)(B). Applicant's contention above is sufficiently supported by the record; when trial court asked trial

19

counsel on the record. If, Applicant is found guilty of a State Jail Felony, T.P.C. § 38.04(b)(1) Evading arrest or detention while using a vehicle. And if, the jury finds that Applicant did exhibit his vehicle as a deadly weapon, can that increase Applicant's punishment range? And, trial counsel answered, "No Sir", it cannot increase punishment. And was then promptly corrected on the record by the State, when the State declared in part, "As the trial court knows, "Yes", a deadly weapon finding can increase a State Jail Felony Punishment range to a third degree offense". (See § 12.35(a)(1); Memo. p.31). The trial court then turned, and asked trial counsel, "Is that right". Trial counsel then stated, "Okay. I stand corrected". (See Memo. p.31). Applicant has proven by clear, and convincing evidence embeded in the record. (See Memo. p.31; § 12.35 (a)(1)) That, on the day of trial, trial counsel was not familiar with the enhancement structure for State Jail Felony Punishments § 12.35(a)(1)(c)(2)(A)(B).

## XIX.

Trial counsel acknowledged Applicant's contention above, But instead of conceding to the fact that, Applicant's only prior felony conviction does not qualify under § 12.35, to enhance Applicant's punishment. And, furthermore, submitting proper legal recommendations that trial court correct Applicant's excessive illegal sentence. In the middle of appellate litigation, trial counsel has changed his legal theory as to how Applicant was legally enhanced to a 2nd degree felony. Trial counsel now claims under penalty of perjury that, his new legal theory as to how Applicant's only prior felony conviction qualifies to legally enhance Applicant to a 2nd degree felony. Is due to the fact that, Applicant is a T.P.C. §

20

12.42(a)(3) Habitual Offender. (See trial counsel's Affidavit p.4). Under Texas' habitual offender statute, a defendant convicted of a felony is subject to a sentence of a second degree felony, punishment range (2) to (20) years if (1) he has two prior felony convictions, and (2) the conviction for the first prior offense became final before commission of the second. In addition, Texas law requires the State to prove the habitual offender allegation to a jury beyond a reasonable doubt during the punishment phase of the trial. Dretke v. Haley, 124 S.Ct. 1847, 1848 (2004). In the present case, what the record reveals by clear and convincing evidence embeded in the record is that, the State only presented one pen packet, (State's Ex.#4), before the jury to try and increase Applicant's sentence during the punishment phase. Clearly, the State failed to present two prior felony convictions as Texas law requires. (See Memo. p.17-23, & 28-32; also see RR,V.6of6, State's Exhibits Index, Ex.#4). Moreover, the entire record reveals that, Applicant only has one prior felony conviction, this is also revealed in Applicant's indictment, and in the Judgment of Conviction by the Jury Document. (See attachments Indictment Exhibit "B", & Judgment of Conviction by the Jury, Exhibit "C"). In trial counsel's desperate attempt to justify Applicant's illegal enhancement to a second degree felony. Trial counsel purposely committed perjury before the eyes of the court. Furthermore, trial counsel's false statements clearly mislead the trial court. This is evident by trial court's determination in it's Conclusion of Law #4.

Moreover, in trial counsel's Affidavit in answer #3 on page #4, it reveals that trial counsel is still not familiar as to how prior felony convictions qualify to enhance State Jail Felony Convictions.

Therefore, Applicant has factually demonstrated in the foregoing that trial counsel's answers in his Affidavit are completely unreliable. In addition, according to T.R.A.P., Rule 44.2 when Applicant directs the court to an exact place in the appellate record or introduces evidence that reveals "Constitutional Error". Then Applicant's case is subject to harmless error review, the court of appeals must reverse judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. In the present case, Applicant has sufficiently proven by evidence embeded in the appellate record along with State Statutes, and State, and Federal case law that, trial counsel did engage in (I.A.C.). Which clearly violated the applicable Sections of the Texas, and U.S. Constitutions, and the principles set out in In re Winship, Jackson v. Virginia, and Strickland v. Washington,.

Moreover, Applicant has factually demonstrated that crucial questions of constitutional magnitude remain unresolved, contrary to the trial court's findings. Which requires that an Evidentiary Hearing be entertained in order to determine the legality of Applicant's confinement. T.R.A.P., Rule 33.1; Moff v. State,; United States v. Vasquez,.

## XX.

Ground Three, Applicant contends that appellate counsel failed to provide effective assistance during direct appeal. In Point of Error One, Applicant contends that he has sufficiently proven in his Memo. p.40-41, & 4-23, that, the "plain errors", Applicant claimed in Point One remain unresolved. In Ground Three, Point of Error Two, Applicant contends that, he has sufficiently proven in his Memo. p.

22

23-40, with evidence embeded in the record that, trial counsel was ineffective, and appellate counsel failed to bring those "plain errors", to light. (See Memo. p.26-28, & 23-40). In Ground Three, Point of Error, Three, and Four, Applicant contends that appellate counsel has purposely failed to meet his appellate obligations to properly, and timely inform Applicant of his Statutory appellate options. This fact is sufficiently proven in Applicant's Memo. p. 43-49.

In addition, during the commencement of Applicant's trial a discussion took place between trial counsel, the State, and the trial court in regards to the unknown identity of the 911 caller. Trial counsel argued that since the anonymous 911 caller's identity was never known the recording is inadmissible, and can not used during trial to prosecute Applicant. To the present day the prosecution has never claimed that it knew the 911 caller's identity.

Thereafter, Applicant formulated a point of error in regards to this fact. (See Ground One, Point One, found in Memo. p.4-7). In fact, the entire appellate record is completely silent in regards to the identity of the anonymous 911 caller. But yet, when trial court ordered appellate counsel to address the trial court's Controverted, Previously Unresolved Facts Material to the Legality of Applicant's Confinement. Appellate counsel declared under penalty of perjury in his Affidavit that, he had reviewed the appellate record, and had discovered the identity of the 911 caller, Erica Garcia. If appellate counsel's contention is correct, why then did appellate counsel not submit a copy of the alleged document that supposedly identifies Erica Garcia as the anonymous 911 caller in support of his contention? It is obvious that even the trial court is not

23

convinced that Erica Garcia is the anonymous 911 caller. Applicant's contention is corroborated by the fact that, even the trial court did not acknowledge appellate counsel's unsubstantiated claim in it's Findings of Fact and Conclusions of Law. Applicant has factually demonstrated that in appellate counsel's desperate attempt to qualify the inadmissible 911 tape recording with, which to prosecute Applicant. Appellate counsel has committed perjury by declaring such fraudulent statement under oath in his Affidavit. (See Appellate counsel's Affidavit p.1, B.1).

Furthermore, Applicant has factually demonstrated in the foregoing that appellate counsel's answers in his Affidavit are completely unreliable. In addition, Applicant has factually proven with evidence embeded in the appellate record that appellate counsel did engage in I.A.C. Which clearly violated the applicable Sections of the Texas, and U.S. Constitutions, and the principles set out in In re Winship, Jackson v. Virginia, and Strickland v. Washington,.

Moreover, Applicant has factually demonstrated in this Rebuttal in regards to the Trial Court's Findings of Fact and Conclusions of Law that, crucial questions of constitutional magnitude remain unresolved contrary to the trial court's determinations. In addition, Applicant has formulated, and presented before the trial court persuasive arguments in regards to how Applicant's Constitutional Rights have been violated, especially Applicant's illegal sentence. It is well established that a sentence not authorized by law, as we have in the present case, is void. Fullbright v. State, 818 S.W.2d 808, 809 (Tex. Cr. App. 1991); Heath v. State, 817 S.W.2d 335, 339 (Tex. Cr. App. 1991). The Texas Court of Criminal Appeals has held that a trial court always has authority to correct an illegal sentence.

24

<u>Mizell v. State</u>, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003). In the present case, Applicant has proven by clear, and convincing evidence that his sentence is illegal. But yet, the trial court has refused to perform it's ministerial duty to correct such egregious miscarriage of justice.

Prayer

Wherefore, All Things Considered, Applicant humbly requests that this Honorable Court take into consideration the foregoing Rebuttal, and grant Applicant an Evidentiary Hearing. So that, Applicant may be afforded a full, and fair fact hearing to develope material facts in support of Applicant's Grounds, and points of error in his 11.07. Especially, Applicant's void sentence.

Therefore, based upon the foregoing reasons, Applicant prays this Honorable Court grant Applicant an Evidentiary Hearing pursuant to Texas Rules of Appellate Procedure, Rules 33.1; 44.2; Texas Code of Criminal Procedure, Article 11.07(3)(d); <u>Townsend v. Sain</u>, 372 U.S. 293, 313, 9 L.Ed.2d 770 (1963); <u>Guidry v. Dretke</u>, 397 F.3d 306, 332-23 (5th Cir. 2005). Furthermore, Applicant prays for any other relief which this Honorable Court deems justice, and proper to protect Applicant's State, and Federal Constitutional Amendment Rights.

Respectfully Submitted,

Eliseo Rivera, Jr. TDCJ #1617277

25

## Certificate of Service

I, Eliseo Rivera, Jr. T.D.C.J. #1617277, Applicant hereby certify that, a true, and correct copy of the foregoing, and accompanying Motion has been forwarded by U.S. Mail, Postage Pre-paid, First Class to the Attorney for the State at Deaf Smith County Courthouse, 235 E. 3rd Street, Room 401, Hereford, Texas 79045-5593.

_____
Eliseo Rivera, Jr. TDCJ #1617277

## Inmate Declaration

I, Eliseo Rivera, Jr. T.D.C.J. #1617277, Applicant declare under penalty of perjury that the foregoing is true, and correct.

Executed in the Dalhart Unit in Hartley County, Texas on this the 7th day of May, 2015.

Respectfully Submitted,

_____
Eliseo Rivera, Jr. TDCJ #1617277
Dalhart Unit
11950 Fm. 998
Dalhart, Texas 79022

<u>Trial Cause No. CR-09E-061</u>

<u>Appellate No. 07-09-00332-CR</u>

Ex Parte                       §    In the Texas Court of

Eliseo Rivera, Jr.             §    Criminal Appeals

                            §    Austin, Texas

Motion Requesting this Honorable Court to Order the
Texas Rangers to Conduct a Criminal Investigation

To the Honorable Justice(s) of Said Court:

Comes Now, Eliseo Rivera, Jr. T.D.C.J. #1617277 hereinafter Applicant, Pro Se, in the above styled, and numbered cause, and files this Motion pursuant to Texas Rules of Appellate Procedure, Rule 10.1(a)(1).

Moreover, Applicant contends that the Attorney for the State purposely engaged in a felonious behavior when, the State intentionally, and knowingly introduced Applicant's prior felony conviction that, clearly did not qualify to enhance Applicant's charge, State Jail Felony, Evading Arrest or Detention while using a vehicle T.P.C. § 38.04(a)(b)(1), under T.P.C. § 12.35 State Jail Felony Punishment (Enhancement)(c)(2)(A)-(B) (2004). (See Memorandum of Law (Memo.) pages 17-21, & 29-31). Therefore, Applicant humbly requests that this Honorable Court Order the Texas Rangers to conduct a thorough criminal investigation into the prosecutor's illegal conduct during Applicant's trial.

In support of this Motion Applicant shows this Honorable Court the following facts:

I.

On May 17, 2009, Applicant was indicted in Cause No. CR-09E-061, for allegedly committing the offense of T.P.C. § 38.04(a)(b)(1) State Jail Felony, Evading Arrest or Detention while using a vehicle in Deaf Smith County, Texas. (see Memo. p.1).

1

## II.

On September 29,2009, Applicant's case was called to a jury trial, (See Memo.,p.1). On September 30,2009, during the punishment phase the prosecution maliciously introduced before the court, and jury Applicant's prior felony conviction of T.P.C. § 29.02 Robbery, that the prosecutor clearly knew did not qualify as an enhancement factor according to § 12.35 State Jail Felony Punishment (Enhancement)(c)(2)(A)-(B). (See Memo.,p. 17-21, & 29-31). But, regardless to the fact above, the prosecutor, Chris Strowd proceeded to introduce this inadmissible enhancement to illegally increase Applicant's punishment range from a Third Degree Felony with a sentencing range of (2) to (10) yrs., to a Second Degree Felony with a sentencing range of (2) to (20) yrs. in T.D.C.J. (See Memo.,p. 17-21, & 29-31).

## III.

Clearly, the prosecutor's criminal activity during Applicant's punishment phase before the court, and jury constituted fraud, and stripped Applicant of his Sixth U.S. Const. Amend. Right to a fair trial. Bobo v. State, 805 S.W.2d 493, 497 (Tex.App.-Houston [14th Dist.] 1991). Furthermore, Applicant contends that his sentence should be reversed, and further requests that this Honorable Court Order a new punishment hearing.

## IV.

In support of Applicant's contention above Applicant presents the following exemplary case:

In Bobo v. State, Supra, Appellant complained that the prosecutor purposely used an inadmissible prior felony conviction to illegally increase Appellant's sentencing range, as the prosecution has also resorted to in the present case. In Bobo, the court of appeals held that the record reflects that Appellant's indictment contained two enhancement paragraphs. The second paragraph alleged that Appellant had previously been convicted of burglary in a California court. The pen packet contained a conviction certification dated February 24, 1989; however, the identifying fingerprints bear a certification date of April 4,1989. Appellant contended that the prosecutor altered the pen packet by adding additional documents that did not coincide with the original documents.

2

## V.

In its brief, the State admits that the second enhancement paragraph containing Appellant's prior felony conviction did not qualify as a legal enhancement due to the fact that, the California pen packet did not contain the fingerprints certification to coincide with the conviction certification dated February 24,1989, as required by the Texas Statutory, Code of Criminal Procedure, Art. 42.09. Clearly, regardless to the fact above the prosecutor tampered with the pen packet trying to qualify it as a State Jail Felony Punishment (Enhancement). Once Appellant brought this egregious error before the court of appeals' attention, the court suggested that Appellant should be afforded a new punishment hearing. And, accordingly sustained Appellant's point of error, and Remanded Appellate's case to trial court for a new hearing on punishment only.

## VI.

Appellant further complained that, he was stripped of his Sixth Amend. Right to a fair trial due to misconduct by the prosecutor, For several years the U.S. Supreme Court, and the Texas Court of Criminal Appeals have handed down opinions which seriously hampered the effective investigation, prosecution, and incarceration of criminals. The trend to protect the rights of the accused has swung so far to the left that we have seemingly forgotten about the rights of the victims of crimes. However, it has become increasingly clear that these stringent guidelines are forced upon us when the State refuses to follow or be bound by the rules. The actions of the prosecutor in this case, Nancy Conlin must be condemned. Upon discovering what she had done, the District Attorney of Harris County notified the court, terminated her employment, and referred the matter to a Harris County grand jury. By her acts Nancy Conlin has set herself above the rules, and has perpetrated a fraud upon the court, and the jury. Bobo v. State, Supra.

## VII.

We agree with the court of appeals that: The actions of the prosecutor in this case, Nancy Conlin, must be condemned, upon discovering what she had done, the District Attorney's Office was obligated to notify the court, terminate her smployment, and refer the matter to the Harris County grand jury. Because, by her

acts, Nancy Conlin has set herself above the rules, and has perpet-
rated a fraud upon the court, and the jury.  <u>Bobo v. State</u>, 843 S.W.2d
572, 575 (Tex. Crim. App. 1992).

## VIII.

Clearly, <u>Bobo</u>, Supra mirrors the present case due to the fact
that as in <u>Bobo</u>, Applicant has factually demonstrated in his Memo-
randum of Law pages 17-21, and 29-31 along with evidence embeded in
the record, and State statute,  T.P.C. § 12.35 State Jail Felony
Punishment (Enhancement)(c)(2)(A)-(B), that Applicant's prior con-
viction did not fall within the realm of qualified crimes outlined
in § 12.35(c)(2)(A)-(B) to legally enhance a State Jail Felony.  But
regardless to the fact above, as in <u>Bobo</u>, the prosecutor, Chris
Strowd has set himself above the rules, and has perpetrated a fraud
upon the court, and the jury.  When the prosecutor proceeded to present
Applicant's prior felony conviction during Applicant's punishment
phase for enhancement purposes.

## Prayer

Applicant prays that, pursuant to the facts above this Honorable
Court Order the Texas Rangers to conduct a criminal investigation into
the prosecutor, Chris Strowd's prosecution practices in the 222nd
Judicial District Court in Deaf Smith County, Texas.  And, Further-
more, make appropriate findings of fact, and conclusions of law.
In addition, if it is determined that, the prosecutor did engaged in
misconduct during Applicant's punishment or any part of trial.  Then,
Applicant humbly requests that Chris Strowd be relieved of his duties
to coincide with <u>Bobo</u>,.

## Certificate of Service

I, Eliseo Rivera, Jr. T.D.C.J. #1617277 Applicant, Pro Se, certify
that a true, and correct copy of the foregoing Motion has been for-
warded by U.S. Mail, Postage Prepaid, First Class to District Clerk,
Jean Coody at Deaf Smith County Courthouse, 235 E. 3rd Street, Rm. 304,
Hereford, Texas 79045, and to the Attorney for the State at Deaf Smith
County Courthouse, 235 E. 3rd Street, Rm. 401, Hereford, Texas 79045-
5593, on this the 7th day of May 2015.

Eliseo Rivera, Jr. TDCJ #1617277

4

NO. CR-*D9E-061*

## THE STATE OF TEXAS

### V.

ELISEO RIVERA, JR.

# INDICTMENT

OFFENSE: FELONY EVADING

ATTORNEY:

A TRUE BILL: *Linda Att*

Foreman of the Grand Jury

FILED

FILED in the 222nd District Court under the case/file number as indicated and on the date and time stamped.

*Jean Coody*

JEAN SCHUMACHER-COODY
District Clerk, Deaf Smith County, TX
By _____ Deputy

\* \* \* \* \* \* \* \* \* \* \*

Amount of Bail

$ 10,000

\* \* \* \* \* \* \* \* \* \* \*

JP Case#_____

| STATE OF TEXAS | § |
| COUNTY OF DEAF SMITH | § |

I, **JEAN COODY,** Clerk of the 222nd Judicial District Court of Deaf Smith County, Texas, do hereby certify that the within and foregoing is a true and correct copy of the Original Bill of Indictment filed in said Court on the date and time stamped above in the captioned styled and numbered cause.

Given under my hand and the seal of said Court, at office in Hereford, Texas, this 27th day of _____May_____, A.D. 2009.

*Jean Coody*

**JEAN COODY**

District Clerk-Deaf Smith County, Texas

By: _____, Deputy

NO. CR-09E-061

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURORS, in and for the County of Deaf Smith, State aforesaid, duly organized, impaneled, and sworn as such, at the January Term, A.D., 2009 of the District Court of the 222nd Judicial District in and for said County and State, upon their oaths, present in and to said Court that ELISEO RIVERA, JR., who is hereinafter styled Defendant, on or about the 29th day of March, 2009, and anterior to the presentment of this indictment, in the County and State aforesaid, did then and there while using a vehicle, intentionally flee from Richard Jimenez, a person the defendant knew was a peace officer who was attempting lawfully to arrest or detain the defendant.

And it is further presented in and to said Court that a deadly weapon, to-wit: a motor vehicle, was used or exhibited during the commission of the aforesaid offense or during immediate flight following the commission of the aforesaid offense, and that the defendant used or exhibited said deadly weapon, or was a party to the aforesaid offense and knew that a deadly weapon would be used or exhibited. 9/27/09 R.S.

## ENHANCEMENT

And it is further presented in and to said Court that, prior to the commission of the aforesaid offense, on the 13th day of January 1984, in cause number CR-83J-125 in the 222nd Judicial District Court of Deaf Smith County, Texas, the defendant was convicted of the felony offense of Robbery.

against the peace and dignity of the State.

_____
Criminal District Attorney

_____
Foreman of the Grand Jury